```
IN THE UNITED STATES DISTRICT COURT
  FOR THE NORTHERN DISTRICT OF INDIANA
            SOUTH BEND DIVISION
```

MARK BOYLE and              )
TERESA BOYLE,               )
                            )
       Plaintiffs,          )
                            )
    v.                      )
                            )  No. 3:13-CV-732
INFRASOURCE CONSTRUCTION,   )
LLC, *et al.*,              )
                            )
       Defendants.          )

## OPINION AND ORDER

This matter is before the Court on the Defendants' Motion to Prohibit Brian L. Ratigan, M.D., From Offering Expert Testimony on the Issue of Causation, filed by Defendants, InfraSource Construction, LLC f/k/a InfraSource Underground Construction, LLC ("InfraSource") and Peter L. Anthony ("Anthony"), on November 24, 2014 (DE #38). For the reasons set forth below, the motion (DE #38) is **DENIED**. However, **DISCOVERY is HEREBY reopened for 60 days** for the limited purpose of examining any additional relevant records related to the issue of causation, and for Defendants to obtain their own expert on the issue of causation (if they so wish), and make that expert available to Plaintiffs for deposition.

BACKGROUND

Plaintiffs allege Anthony was an employee of Quanta Services, Inc. (Compl., DE #1, ¶ 4.) While operating a pickup truck leased to InfraSource, Plaintiffs allege Anthony ignored, disregarded or otherwise failed to completely obey a stop sign controlling the intersection at Rose Road and Old Lincoln Highway in Plymouth, Marshall County, Indiana, and collided with Teresa Boyle's vehicle, causing her significant injuries. (*Id.*, ¶¶ 17-19.)

Boyle contends that the August 5, 2011 automobile accident caused her to sustain the following injuries to her right shoulder: (1) a SLAP[1] tear, (2) a chondral defect on the humeral head, and (3) a tear of the subscapularis tendon. (Defs.' Ex. B, DE #39-2.) Since December 2011, Boyle received medical treatment from Dr. Brian L. Ratigan, M.D., an orthopedic surgeon affiliated with South Bend Orthopedics. (Defs.' Ex. C, DE #39-3, Ratigan Dep., Aug. 13, 2014, p. 8) Dr. Ratigan surgically repaired Boyle's SLAP tear, in May 2013 Dr. Ratigan resurfaced Boyle's humeral head through a second surgical procedure, and finally in May 2014 Dr. Ratigan repaired the subscapularis tear through during a third surgery. (Defs.' Ex. D, DE #39-4, Ratigan Dep. Oct. 15, 2014, pp. 75-58.)

Plaintiffs did not disclose Dr. Ratigan's name on their Rule

---

[1] According to the American Academy of Orthopaedic Surgeons, "SLAP" stands for Superior Labrum Anterior and Posterior. It is a tear injury to the ring of cartilage that surrounds the socket of the shoulder joint.
Http://orthoinfo.aaos.org/topic.cfm?topic=A00627.

26(a)(2) Disclosures. (Defs.' Ex. E, DE #39-5.) During his deposition, Dr. Ratigan opined that all three of Teresa Boyle's right shoulder injuries were, in his opinion, caused by the August 2011 collision. (Defs.' Ex. C, DE #39-3, Ratigan Dep. Aug. 13, 2014, pp. 18, 19, 31, 39.)

**DISCUSSION**

Federal Rule of Evidence 702, which governs expert testimony, provides the following:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

F.R.E. 702. In addition, in *Daubert v. Merrell Dow Pharms., Inc.*, the Supreme Court fashioned a two-prong test of admissibility for evidence based on the "scientific knowledge" mentioned in Rule 702. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993). To be admissible, evidence must be both relevant and reliable. *Id.* at 589; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999) (noting the objective of court's gatekeeping requirement is to ensure reliability and relevancy of expert testimony).

3

Under the reliability prong, scientific evidence must be reliable in the sense that the expert's testimony must present genuine scientific knowledge. *Daubert*, 509 U.S. at 592-93; *Deimer v. Cincinnati Sub-Zero Prods. Inc.*, 58 F.3d 341, 344 (7th Cir. 1995). Generally, the expert witness must employ in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the witness's field. *Kumho*, 526 U.S. at 152. Specifically, a court may, but is not required to, consider a nonexclusive list of four factors in assessing reliability: (1) whether the expert's theories and techniques can be verified by the scientific method through testing; (2) whether the theories and techniques have been subjected to peer review and publication; (3) whether the theories and techniques have been evaluated for their potential rate of error; and (4) whether the theories and techniques have been generally accepted by the relevant scientific community. *Daubert*, 509 U.S. at 593-94.

However, it is important to note that "the measure of intellectual rigor will vary by the field of expertise and the way of demonstrating expertise will also vary." *Tyus v. Urban Search Mgmt.*, 102 F.3d 256, 263 (7th Cir. 1996). As the Seventh Circuit pointed out in *United States v. Allen*, 269 F.3d 842, 846 (7th Cir. 2001), the Advisory Committee notes to Rule 702 note that "[i]n certain fields, experience is the predominant, if not the sole, basis for a great deal of reliable expert testimony." Fed. R.

Evid. 702, 2000 advisory committee notes.

Under the relevance prong, the testimony must assist the trier of fact to understand the evidence in the sense that it is relevant to or "fits" the facts of the case. *Daubert*, 509 U.S. at 591; *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000). In other words, the testimony must be such that the jury can apply it in a meaningful way to the facts at hand. This "fit" analysis essentially represents an inquiry similar to if not indistinguishable from the basic evidentiary inquiries into whether evidence is relevant and, if so, whether its probative value is nonetheless substantially outweighed by, among others, the danger of unfair prejudice and jury confusion. *See Daubert*, 509 U.S. at 595; *Ayers v. Robinson*, 887 F. Supp. 1049, 1058-59 (N.D. Ill. 1995).

In this case, Defendants first argue that Plaintiffs waived the right to present any expert testimony from Dr. Ratigan at trial regarding causation, duration, or effect of Boyle's injuries, because they failed to disclose him as an expert pursuant to Federal Rule of Civil Procedure 26(a)(2). While it is true Dr. Ratigan was not identified in the Rule 26(a)(2)(A) disclosures, as spelled out in Plaintiffs' response, the Plaintiffs did provide: a summary expert report from Dr. Ratigan including his opinion on causation; deposition testimony disclosing Dr. Ratigan's opinions on causation; discovery answers that Dr. Ratigan's opinions would

be supplemented; and electronic communications that Dr. Ratigan's deposition would establish causation. (DE #40, pp. 1-2.) Indeed, Plaintiffs provide at least 8 examples of notices of Dr. Ratigan's opinions on causation. (DE #40, pp. 2-3.) Rules 26 does provide that "*[a]ll* witnesses who are to give expert testimony under the Federal Rules of Evidence must be disclosed under Rule 26(a)(2)(A)." *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 756 (7th Cir. 2004) (emphasis in original). However, the purpose of providing an expert's report "is to provide adequate notice of the substance of the expert's forthcoming testimony, and to give the opposing party time to prepare for a response." *Meyers v. Nat'l R.R. Passenger Corp.*, 619 F.3d 729, 734 (7th Cir. 2010). Plaintiffs did not follow the rule to the letter, but they did give Defendants notice that Dr. Ratigan was going to opine on causation. The trial in this case is set for August 2015. Under the circumstances, the Court believes the most equitable course of action would be to reopen discovery to allow Defendants to conduct additional discovery about Dr. Ratigan's causation opinion, and to allow Defendants an opportunity to obtain their own causation expert, should they so choose.

Defendants also argue that Dr. Ratigan is not qualified to opine on the issue of causation. Specifically, they contend he lacks the knowledge, skill, experience, training, and education to qualify as an expert on causation. (DE #39, pp. 6-7.) Defendants

concede he is an expert in the field of orthopedic medicine, but contend he also needs a background in biomechanics. (*Id.*, pp. 6-7.) This Court finds that Dr. Ratigan, as an orthopedic surgeon, does possess the skill, experience, training and education to qualify as an expert on the issue of the cause of Plaintiff's injuries. *See, e.g., Banister v. Burton*, 636 F.3d 828, 831-32 (7th Cir. 2011) (holding training in common to all doctors qualified a trauma surgeon to give opinions on Plaintiff's ability to throw an object or crawl); *Musser*, 356 F.3d at 757 n. 2. As the Seventh Circuit recently rationalized:

> Defendants' argument places the bar for medical expert testimony much too high. Indeed, taking Defendants' argument to its logical conclusion, no doctor would ever be qualified to give medical causation testimony unless he or she was also qualified in the field of accident reconstruction or the like. The court therefore finds that Dr. Misamore, in his capacity as an orthopaedic surgeon with more than twenty-five years of experience treating rotator cuff-type injuries for patients like Charles, is qualified to give such an opinion.

*Charles v. Quality Carriers, Inc.*, No. 1:08-cv-0428-RLY-JMS, 2010 WL 724510, at *3 (S.D. Ind. Feb. 25, 2010). This Court concurs, finding Dr. Ratigan, an orthopedic surgeon who formulated his opinion on causation during surgery, is permitted to present causation testimony under Rule 702. Dr. Ratigan prepared a summary expert report, told defense that Plaintiff's rotator cuff tear and chondral head defect were consistent with the mechanism of injury, and during his deposition noted the chondral head defect was a

7

traumatic, not chronic, injury. This evidence all corroborates his opinion that the rotator cuff was torn by the forces in the accident, and the Court finds Dr. Ratigan qualified to give such an opinion.

Finally, Defendants argue that Dr. Ratigan's conclusion that Plaintiff's SLAP tear and chondral defect of the humeral head were caused by the August 5, 2011 collision is unreliable because it is unsupported by sufficient facts or data, and is not the product of reliable principles or methods under *Daubert*. The Court disagrees. During his deposition, Dr. Ratigan testified as to the facts and observations which supported his causation conclusion, including the nature of the repair and the fact that there weren't any complaints of shoulder pain prior to the injury. (Pl.'s Ex. 9, DE # 40-9, Ratigan Dep., pp. 19-20.) He also testified as to her articular cartilage being subjected to traumatic sheering forces, leaving a deficit in the cushion between bones, and leaving nerve endings exposed. Those forces, coupled with the absence of any pain complaints in Plaintiff's right shoulder prior to the crash, lead to Dr. Ratigan's conclusion that the rotator cuff was ripped or torn by the same forces which ripped a divot from the articular cartilage of her humerus. (*Id.*, pp. 20-21.) Dr. Ratigan has testified that the tear of Plaintiff's right rotator cuff was traumatic, not degenerative or chronic, because of the physical condition he repaired, and explained the sheering force that tore

off her rotator cuff and sheered off part of the head of her humerus. Thus, Dr. Ratigan's opinion is not purely speculative or unsupported by scientific data or method. As such, the Court finds that Dr. Ratigan is qualified to testify as to the causation of Teresa Boyle's shoulder injuries, and that his proposed testimony is both reliable and relevant.

CONCLUSION

For the reasons set forth below, the motion (DE #38) is **DENIED**. However, **DISCOVERY is HEREBY reopened for 60 days** for the limited purpose of examining any additional relevant records related to the issue of causation, and for Defendants to obtain their own expert on the issue of causation (if they so wish), and make that expert available to Plaintiffs for deposition.

DATED: January 14, 2015     /s/ RUDY LOZANO, Judge
                            **United States District Court**